1 | ANDRÉ BIROTTE JR.
United States Attorney
2 | ROBERT DUGDALE
Assistant United States Attorney
3 | Chief, Criminal Division
ANDREW STOLPER (Cal. Bar No. 205462)
4 | Assistant United States Attorneys
　　411 West Fourth Street
5 | 　　Santa Ana, California 92701
　　Telephone: (714) 338-3536
6 | 　　Facsimile: (714) 338-3708
　　E-mail:   andrew.stolper@usdoj.gov
7 |
Attorneys for Plaintiff
8 | UNITED STATES OF AMERICA

9

10 | 　　　　　　UNITED STATES DISTRICT COURT

11 | 　　　FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13 | UNITED STATES OF AMERICA,　　) SA CR No. 10-215
　　　　　　　　　　　　　　　　　)
14 | 　　　　　　Plaintiff,　　　　) PLEA AGREEMENT FOR DEFENDANT
　　　　　　　　　　　　　　　　　) CHAD SMANJAK
15 | 　　　　　　v.　　　　　　　　)
　　　　　　　　　　　　　　　　　)
16 | CHAD SMANJAK,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
17 | 　　　　　　Defendant.　　　　)
　　　　　　　　　　　　　　　　　)
18 | _____ )

19

20 | 　　　1.　　This constitutes the plea agreement between Chad Smanjak

21 | ("defendant") and the United States Attorney's Office for the

22 | Central District of California ("the USAO") in the above-

23 | captioned case as well as the investigation of defendant for

24 | securities fraud.　This agreement is limited to the USAO and

25 | cannot bind any other federal, state, local, or foreign

26 | prosecuting, enforcement, administrative, or regulatory

27 | authorities.

28 | 　　　　　　　　　DEFENDANT'S OBLIGATIONS

　　　2.　　Defendant agrees to:

a) Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with conspiracy to commit securities fraud in violation of 18 U.S.C. 371.

b) Waive extradition from the Republic of South Africa and any other nation and return to the United States as directed by the USAO;

c) Not contest facts agreed to in this agreement.

d) Abide by all agreements regarding sentencing contained in this agreement.

e) Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

f) Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

g) Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

h) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

i) Truthfully to disclose to law enforcement officials,

2

1    at a date and time to be set by the USAO, the location of,

2    defendant's ownership interest in, and all other information

3    known to defendant about, all monies, properties, and/or assets

4    of any kind, derived from or acquired as a result of, or used to

5    facilitate the commission of, defendant's illegal activities, and

6    to forfeit all right, title, and interest in and to such items,

7    specifically including all right, title, and interest in and to

8    all United States currency, property, and assets seized by law

9    enforcement officials on or in connection with this matter, which

10   defendant admits constitute the proceeds of defendant's illegal

11   activity and were used to facilitate defendant's criminal

12   activity in violation of 18 U.S.C. §§ 371 and 1348.

13          j) To the Court's entry of an order of forfeiture at or

14   before sentencing with respect to these assets and to the

15   forfeiture of the assets including, without limit, those assets

16   enumerated on Exhibit B to this agreement.

17          k) To take whatever steps are necessary to pass to the

18   United States clear title to the assets described above,

19   including, without limitation, the execution of a consent decree

20   of forfeiture and the completing of any other legal documents

21   required for the transfer of title to the United States.

22          l) Not to contest any administrative forfeiture

23   proceedings or civil judicial proceedings commenced against these

24   properties.  With respect to any criminal forfeiture ordered as a

25   result of this plea agreement, defendant waives the requirements

26   of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding

27   notice of the forfeiture in the charging instrument,

28   announcements of the forfeiture sentencing, and incorporation of

3

the forfeiture in the judgment.  Defendant acknowledges that forfeiture of the assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty plea.

m) Not to assist any other individual in any effort falsely to contest the forfeiture of the assets described above.

n) Not to claim that reasonable cause to seize the assets was lacking.

o) To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

p) To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

3.   Defendant further agrees to cooperate fully with the USAO, the Department of Homeland Security and the Internal Revenue Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a)   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b)   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

4

1       c)   Produce voluntarily all documents records, or

2   other tangible evidence relating to matters about which the USAO,

3   or its designee, inquires that are within his possession, custody

4   or control.

5       4.   For purposes of this agreement: (1) "Cooperation

6   Information" shall mean any statements made, or documents,

7   records, tangible evidence, or other information provided, by

8   defendant pursuant to defendant's cooperation under this

9   agreement or pursuant to the letter agreement previously entered

10  into by the parties dated April 9, 2012 ("the Letter Agreement");

11  and (2) "Plea Information" shall mean any statements made by

12  defendant, under oath, at the guilty plea hearing and the agreed

13  to factual basis statement in this agreement.

14  THE USAO'S OBLIGATIONS

15      5.   The USAO agrees to:

16      a) Not contest facts agreed to in this agreement.

17      b) Abide by all agreements regarding sentencing

18  contained in this agreement.

19      c) At the time of sentencing, provided that defendant

20  demonstrates an acceptance of responsibility for the offense up

21  to and including the time of sentencing, recommend a two-level

22  reduction in the applicable Sentencing Guidelines offense level,

23  pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary,

24  move for an additional one-level reduction if available under

25  that section.

26      d)   Recommend that defendant be sentenced to a term of

27  imprisonment no higher than the low end of the applicable

28  Sentencing Guidelines range.

1    e) At the time of sentencing, move to dismiss the

2 underlying indictment as against defendant.  Defendant agrees,

3 however, that at the time of sentencing the Court may consider

4 any dismissed charges in determining the applicable Sentencing

5 Guidelines range, the propriety and extent of any departure from

6 that range, and the sentence to be imposed.

7    6.   The USAO further agrees:

8    a)   Not to offer as evidence in its case-in-chief in

9 the above-captioned case or any other criminal prosecution that

10 may be brought against defendant by the USAO, or in connection

11 with any sentencing proceeding in any criminal case that may be

12 brought against defendant by the USAO, any Cooperation

13 Information.  Defendant agrees, however, that the USAO may use

14 both Cooperation Information and Plea Information: (1) to obtain

15 and pursue leads to other evidence, which evidence may be used

16 for any purpose, including any criminal prosecution of defendant;

17 (2) to cross-examine defendant should defendant testify, or to

18 rebut any evidence offered, or argument or representation made,

19 by defendant, defendant's counsel, or a witness called by

20 defendant in any trial, sentencing hearing, or other court

21 proceeding; and (3) in any criminal prosecution of defendant for

22 false statement, obstruction of justice, or perjury.

23    b)   Not to use Cooperation Information against

24 defendant at sentencing for the purpose of determining the

25 applicable guideline range, including the appropriateness of an

26 upward departure, or the sentence to be imposed, and to recommend

27 to the Court that Cooperation Information not be used in

28 determining the applicable guideline range or the sentence to be

imposed.  Defendant understands, however, that Cooperation
Information will be disclosed to the probation office and the
Court, and that the Court may use Cooperation Information for the
purposes set forth in U.S.S.G § 1B1.8(b) and for determining the
sentence to be imposed.

        c)    In connection with defendant's sentencing, to
bring to the Court's attention the nature and extent of
defendant's cooperation.

        d)    If the USAO determines, in its exclusive judgment,
that defendant has both complied with defendant's obligations
under paragraphs 2 and 3 above and provided substantial
assistance to law enforcement in the prosecution or investigation
of another ("substantial assistance"), to move the Court pursuant
to U.S.S.G. § 5K1.1 to fix an offense level and corresponding
guideline range below that otherwise dictated by the sentencing
guidelines, and to recommend a term of imprisonment within this
reduced range.

        DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

    7.    Defendant understands the following:

        a)    Any knowingly false or misleading statement by
defendant will subject defendant to prosecution for false
statement, obstruction of justice, and perjury and will
constitute a breach by defendant of this agreement.

        b)    Nothing in this agreement requires the USAO or any
other prosecuting, enforcement, administrative, or regulatory
authority to accept any cooperation or assistance that defendant
may offer, or to use it in any particular way.

        c)    Defendant cannot withdraw defendant's guilty plea

1  if the USAO does not make a motion pursuant to U.S.S.G.  § 5K1.1
2  for a reduced guideline range or if the USAO makes such a motion
3  and the Court does not grant it or if the Court grants such a
4  USAO motion but elects to sentence above the reduced range.

5        d)   At this time the USAO makes no agreement or
6  representation as to whether any cooperation that defendant has
7  provided or intends to provide constitutes or will constitute
8  substantial assistance.  The decision whether defendant has
9  provided substantial assistance will rest solely within the
10 exclusive judgment of the USAO.

11       e)   The USAO's determination whether defendant has
12 provided substantial assistance will not depend in any way on
13 whether the government prevails at any trial or court hearing in
14 which defendant testifies or in which the government otherwise
15 presents information resulting from defendant's cooperation.

16                     <u>NATURE OF THE OFFENSE</u>
17      8.   Defendant understands that for defendant to be guilty of
18 the crime charged in the information, that is, conspiracy to
19 commit securities fraud, in violation of Title 18, United States
20 Code, Section 371 the following must be true:

21      First, beginning not later than 2007, and ending in or
22 around 2010, there was an agreement between two or more persons
23 to commit securities fraud;

24      Second, the defendant became a member of the conspiracy
25 knowing of at least one of its objects and intending to help
26 accomplish it; and

27      Third, one of the members of the conspiracy performed at
28 least one overt act for the purpose of carrying out the

                              8

1  conspiracy.

2        The elements of securities fraud are as follows:

3        First, the defendant willfully used a device or scheme to

4  defraud someone, made an untrue statement of a material fact,

5  failed to disclose a material fact that resulted in making the

6  defendant's statements misleading, and/or engaged in any act,

7  practice, or course of business that operates or would operate as

8  a fraud or deceit upon any person;

9        Second, the defendant's acts were undertaken, statements

10  were made, and/or failure to disclose was done in connection with

11  the purchase or sale of a security;

12        Third, the defendant directly or indirectly used the

13  internet or telephone system in connection with these acts,

14  making these statement, and in these failures to disclose; and

15        Fourth, the defendant acted knowingly.

16                    <u>PENALTIES AND RESTITUTION</u>

17        9.   Defendant understands that the statutory maximum

18  sentence that the Court can impose for a violation of Title 18,

19  United States Code, Section 371, is: 5 years imprisonment; a 3-

20  year period of supervised release; a fine of $250,000 or twice

21  the gross gain or gross loss resulting from the offense,

22  whichever is greatest; and a mandatory special assessment of

23  $100.

24        10.  Defendant understands that defendant will be required

25  to pay full restitution to the victims of the offense to which

26  defendant is pleading guilty.  Defendant agrees that, in return

27  for the USAO's compliance with its obligations under this

28  agreement, the Court may order restitution to persons other than

                                9

the victims of the offense to which defendant is pleading guilty
and in amounts greater than those alleged in the count to which
defendant is pleading guilty.  In particular, defendant agrees
that the Court may order restitution to any victim for any losses
suffered by that victim as a result of any relevant conduct, as
defined in U.S.S.G. § 1B1.3, in connection with the offense to
which defendant is pleading guilty.  The parties currently do not
know what the applicable amount of restitution is.

11.  Defendant understands that supervised release is a
period of time following imprisonment during which defendant will
be subject to various restrictions and requirements.  Defendant
understands that if defendant violates one or more of the
conditions of any supervised release imposed, defendant may be
returned to prison for all or part of the term of supervised
release authorized by statute for the offense that resulted in
the term of supervised release, which could result in defendant
serving a total term of imprisonment greater than the statutory
maximum stated above.

12.  Defendant understands that, by pleading guilty,
defendant may be giving up valuable government benefits and
valuable civic rights, such as the right to vote, the right to
possess a firearm, the right to hold office, and the right to
serve on a jury.  Defendant understands that once the court
accepts defendant's guilty plea, it will be a federal felony for
defendant to possess a firearm or ammunition.  Defendant
understands that the conviction in this case may also subject
defendant to various other collateral consequences, including but
not limited to revocation of probation, parole, or supervised

release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

<u>FACTUAL BASIS</u>

14.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 below but is not meant to be, and is not, a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in approximately 2007 and continuing until at least 2010, defendant and his co-conspirators knowingly engaged in a number of "pump and dump" securities fraud schemes.

11

1  Defendant and his co-conspirators obtained shares in companies
2  that were thinly traded on the "pink sheets."  Then, they
3  knowingly engaged in a variety of fraudulent devices to
4  artificially increase the volume and price of these shares (the
5  "pump") so that they could later "dump" those shares in the
6  market.  These fraudulent devices included false press releases
7  and matched trading – both intended to fraudulently increase the
8  value of the shares they were "pumping."  Defendant and his co-
9  conspirators later "dumped" these shares by selling through
10 various national stock exchanges utilizing the instrumentalities
11 of interstate commerce, include the telephone and the internet to
12 over 250 victims.
13     Beginning not later than 2008, defendant formed a criminal
14 partnership with A.B.  A.B. was more experienced at securities
15 fraud than defendant.  Defendant and A.B. agreed to share in the
16 proceeds of the various stock frauds in which they were
17 participating.  Certain deals were managed by defendant; others
18 by A.B.  Regardless of who was managing the deals, defendant and
19 A.B. agreed to share in the proceeds equally on the deals.  In
20 2008, A.B. introduced defendant to J.S.  J.S. served as A.B.'s
21 money launderer.  A.B. and J.S. explained that J.S. would set up
22 sham corporations in foreign jurisdictions to serve as a front
23 for defendant.  These corporations would engage in all the
24 fraudulent securities transactions on behalf of defendant and
25 receive the proceeds from those activities.  A.B. explained that
26 because J.S. was an attorney the arrangement was totally
27 confidential and assured defendant and A.B. that they would not
28 be linked to the fraud in which they were engaging.  Defendant

12

1    agreed to follow A.B.'s lead and engaged J.S. to set up sham

2    foreign corporations to conceal the proceeds of his fraudulent

3    activities.

4         Defendant, working with his co-conspirators, including A.B.,

5    engaged in pump and dumps for at least the following companies:

6    Hemis Corporation (ticker: HMSO); Shot Pak (ticker: SHTP); Tecton

7    Corporation (ticker: TTNC); Wave Uranium (ticker: WAVE); Mass

8    Petroleum (ticker: MASP); Dana Resources (ticker: DANR); Rudy

9    Nutrition (ticker: RUNU); One World Ventures (ticker: OWVI); and

10   Bonanza Oil and Gas (ticker: BGOI).

11        On March 29, 2010, defendant was telephoned at his office by

12   an IRS-CID agent and informed that there was a search warrant

13   being executed at his residence.  In furtherance of the above-

14   described conspiracy, defendant hid a laptop computer that

15   contained evidence of the above-described conspiracy.

16        As a result of defendant's and his co-conspirators

17   securities fraud, investors incurred a loss of more than $5

18   million.

19                          SENTENCING FACTORS

20        15.  Defendant understands that in determining defendant's

21   sentence the Court is required to calculate the applicable

22   Sentencing Guidelines range and to consider that range, possible

23   departures under the Sentencing Guidelines, and the other

24   sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant

25   understands that the Sentencing Guidelines are advisory only,

26   that defendant cannot have any expectation of receiving a

27   sentence within the calculated Sentencing Guidelines range, and

28   that after considering the Sentencing Guidelines and the other

                                  13

1 § 3553(a) factors, the Court will be free to exercise its

2 discretion to impose any sentence it finds appropriate up to the

3 maximum set by statute for the crime of conviction.

4     16. Defendant and the USAO agree to the following

5 applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | <u>6</u> | [U.S.S.G. § 2B1.1(a)(2)] |
| Specific Offense Characteristics | | | |
| Loss greater than $2.5 million | : | <u>18</u> | [U.S.S.G. § 2B1.1(b)(1)(J)] |
| 250+ victims | : | <u>6</u> | [U.S.S.G. § 2B1.1(b)(2)(C)] |
| Sophisticated Means | : | <u>2</u> | [U.S.S.G. § 2B1.1(b)(10)(c)] |

13 Defendant and the USAO reserve the right to argue that

14 additional specific offense characteristics, adjustments, and

15 departures under the Sentencing Guidelines are appropriate.

16     17. Defendant understands that there is no agreement as to

17 defendant's criminal history or criminal history category.

18     18. Defendant and USAO reserve the right to argue for a

19 sentence outside the range established by the Sentencing

20 Guidelines based on the factors set forth in

21 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6) and (a)(7).

22 <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

23     19. Defendant understands that by pleading guilty,

24 defendant gives up the following rights:

25     a) The right to persist in a plea of not guilty.

26     b) The right to a speedy and public trial by jury.

27     c) The right to be represented by counsel - and if

28 necessary have the court appoint counsel - at trial. Defendant

1   understands, however, that, defendant retains the right to be

2   represented by counsel — and if necessary have the court appoint

3   counsel — at every other stage of the proceeding.

4          d)  The right to be presumed innocent and to have the

5   burden of proof placed on the government to prove defendant

6   guilty beyond a reasonable doubt.

7          e)  The right to confront and cross-examine witnesses

8   against defendant.

9          f)  The right to testify and to present evidence in

10  opposition to the charges, including the right to compel the

11  attendance of witnesses to testify.

12         g)  The right not to be compelled to testify, and, if

13  defendant chose not to testify or present evidence, to have that

14  choice not be used against defendant.

15         h)  Any and all rights to pursue any affirmative

16  defenses, Fourth Amendment or Fifth Amendment claims, and other

17  pretrial motions that have been filed or could be filed.

18                    <u>WAIVER OF APPEAL OF CONVICTION</u>

19     20. Defendant understands that, with the exception of an

20  appeal based on a claim that defendant's guilty plea was

21  involuntary, by pleading guilty defendant is waiving and giving

22  up any right to appeal defendant's conviction on the offense to

23  which defendant is pleading guilty.

24              <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

25     21.  Defendant agrees that, provided the Court imposes a

26  total term of imprisonment of no more than 60-months, defendant

27  gives up the right to appeal all of the following: (a) the

28  procedures and calculations used to determine and impose any

                                15

1  portion of the sentence; (b) the term of imprisonment imposed by
2  the Court; (c) the fine imposed by the court, provided it is
3  within the statutory maximum; (d); the amount and terms of any
4  restitution order; (e) the term of probation or supervised
5  release imposed by the Court, provided it is within the statutory
6  maximum; and (f) any of the following conditions of probation or
7  supervised release imposed by the Court: the standard conditions
8  set forth in General Orders 318, 01-05, and/or 05-02 of this
9  Court; the drug testing conditions mandated by
10 18 U.S.C. §§ 3563(a)(5) and 3583(d) and the alcohol and drug use
11 conditions authorized by 18 U.S.C. § 3536(b).

12      22.   The USAO agrees that, provided (a) all portions of the
13 sentence are at or below the statutory maximum specified above
14 and (b) the Court imposes a term of imprisonment, the USAO gives
15 up its right to appeal any portion of the sentence, with the
16 exception that the USAO reserves the right to appeal the amount
17 of restitution ordered.

18               RESULT OF WITHDRAWAL OF GUILTY PLEA

19      23.   Defendant agrees that if, after entering a guilty plea
20 pursuant to this agreement, defendant seeks to withdraw and
21 succeeds in withdrawing defendant's guilty plea on any basis
22 other than a claim and finding that entry into this plea
23 agreement was involuntary, then (a) the USAO will be relieved of
24 all of its obligations under this agreement, including in
25 particular its obligations regarding the use of Cooperation
26 Information; and (b) in any investigation, criminal prosecution,
27 or civil, administrative, or regulatory action, defendant agrees
28 that any Cooperation Information and any evidence derived from

any Cooperation Information shall be admissible against
defendant, and defendant will not assert, and hereby waives and
gives up, any claim under the United States Constitution, any
statute, or any federal rule, that any Cooperation Information or
any evidence derived from any Cooperation Information should be
suppressed or is inadmissible

### EFFECTIVE DATE OF AGREEMENT

24.   This agreement is effective upon signature and
execution of all required certifications by defendant,
defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

25.   Defendant agrees that if defendant, at any time after
the signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and an
Assistant United States Attorney, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the USAO may declare this agreement breached.  For
example, if defendant knowingly, in an interview, before a grand
jury, or at trial, falsely accuses another person of criminal
conduct or falsely minimizes defendant's own role, or the role of
another, in criminal conduct, defendant will have breached this
agreement.  All of defendant's obligations are material, a single
breach of this agreement is sufficient for the USAO to declare a
breach, and defendant shall not be deemed to have cured a breach
without the express agreement of the USAO in writing.  If the
USAO declares this agreement breached, and the Court finds such a
breach to have occurred, then:

(a) If defendant has previously entered a guilty plea

1  pursuant to this agreement, defendant will not be able to

2  withdraw the guilty plea.

3         (b) The USAO will be relieved of all its obligations

4  under this agreement; in particular, the USAO: (i) will no longer

5  be bound by any agreements concerning sentencing and will be free

6  to seek any sentence up to the statutory maximum for the crime to

7  which defendant has pleaded guilty; (ii) will no longer be bound

8  by any agreements regarding criminal prosecution, and will be

9  free to criminally prosecute defendant for any crime, including

10 charges that the USAO would otherwise have been obligated to

11 dismiss pursuant to this agreement; and (iii) will no longer be

12 bound by any agreement regarding the use of Cooperation

13 Information and will be free to use any Cooperation Information

14 in any way in any investigation, criminal prosecution, or civil,

15 administrative, or regulatory action.

16        c)    The USAO will be free to criminally prosecute

17 defendant for false statement, obstruction of justice, and

18 perjury based on any knowingly false or misleading statement by

19 defendant.

20        d)    In any investigation, criminal prosecution, or

21 civil, administrative, or regulatory action: (i) defendant will

22 not assert, and hereby waives and gives up, any claim that any

23 Cooperation Information was obtained in violation of the Fifth

24 Amendment privilege against compelled self-incrimination; and

25 (ii) defendant agrees that any Cooperation Information and any

26 Plea Information, as well as any evidence derived from any

27 Cooperation Information or any Plea Information, shall be

28 admissible against defendant, and defendant will not assert, and

1  hereby waives and gives up, any claim under the United States
2  Constitution, any statute, Rule 410 of the Federal Rules of
3  Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure,
4  or any other federal rule, that any Cooperation Information, any
5  Plea Information, or any evidence derived from any Cooperation
6  Information or any Plea Information should be suppressed or is
7  inadmissible.
8      26.  Following the Court's finding of a knowing breach of
9  this agreement by defendant, should the USAO choose to pursue any
10 charge that was either dismissed or not filed as a result of this
11 agreement, then:
12     a) Defendant agrees that any applicable statute of
13 limitations is tolled between the date of defendant's signing of
14 this agreement and the filing commencing any such action.
15     b) Defendant waives and gives up all defenses based on
16 the statute of limitations, any claim of pre-indictment delay, or
17 any speedy trial claim with respect to any such action, except to
18 the extent that such defenses existed as of the date of
19 defendant's signing this agreement.
20           COURT AND PROBATION OFFICE NOT PARTIES
21     27.  Defendant understands that the Court and the United
22 States Probation Office are not parties to this agreement and
23 need not accept any of the USAO's sentencing recommendations or
24 the parties' agreements to facts or sentencing factors.
25     28.  Defendant understands that both defendant and the USAO
26 are free to: (a) supplement the facts by supplying relevant
27 information to the United States Probation Office and the Court,
28 (b) correct any and all factual misstatements relating to the

19

1  Court's Sentencing Guidelines calculations and determination of

2  sentence, and (c) argue on appeal and collateral review that the

3  Court's Sentencing Guidelines calculations and the sentence it

4  chooses to impose are not error, although each party agrees to

5  maintain its view that the calculations in paragraph 16 are

6  consistent with the facts of this case.  While this paragraph

7  permits both the USAO and defendant to submit full and complete

8  factual information to the United States Probation Office and the

9  Court, even if that factual information may be viewed as

10  inconsistent with the facts agreed to in this agreement, this

11  paragraph does not affect defendant's and the USAO's obligations

12  not to contest the facts agreed to in this agreement.

13       29.  Defendant understands that even if the Court ignores

14  any sentencing recommendation, finds facts or reaches conclusions

15  different from those agreed to, and/or imposes any sentence up to

16  the maximum established by statute (60 months), defendant cannot,

17  for that reason, withdraw defendant's guilty plea, and defendant

18  will remain bound to fulfill all defendant's obligations under

19  this agreement.  Defendant understands that no one -- not the

20  prosecutor, defendant's attorney, or the Court -- can make a

21  binding prediction or promise regarding the sentence defendant

22  will receive, except that it will be within the statutory

23  maximum.

24                    NO ADDITIONAL AGREEMENTS

25       30.  Defendant understands that, except as set forth herein,

26  there are no promises, understandings, or agreements between the

27  USAO and defendant or defendant's attorney, and that no

28  additional promise, understanding, or agreement may be entered

1   into unless in a writing signed by all parties or on the record

2   in court.

3   <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

4        31.   The parties agree that this agreement will be

5   considered part of the record of defendant's guilty plea hearing

6   as if the entire agreement had been read into the record of the

7   proceeding.

8   AGREED AND ACCEPTED

9   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF CALIFORNIA

10  ANDRÉ BIROTTE JR.

11  United States Attorney

12

13                                          8-1-12
    _____         _____
14  ANDREW STOLPER                      Date
    Assistant United States Attorney

15

16                                          12 JUNE 2012
    _____         _____
17  CHAD SMANJAK                        Date
    Defendant

18

19
    _____         _____
20  LAWRENCE FELD                       Date
    Attorney for Defendant
21  CHAD SMANJAK

22

23

24

25

26

27

28

                              21

1  into unless in a writing signed by all parties or on the record

2  in court.

3  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

4      31.  The parties agree that this agreement will be

5  considered part of the record of defendant's guilty plea hearing

6  as if the entire agreement had been read into the record of the

7  proceeding.

8  AGREED AND ACCEPTED

9  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA
10

   ANDRÉ BIROTTE JR.
11  United States Attorney

12

13  _____          _____
   ANDREW STOLPER                                Date
14  Assistant United States Attorney

15

16  _____          _____
   CHAD SMANJAK                                  Date
17  Defendant

18

19  _____          June 29, 2012
   LAWRENCE FELD                                 Date
20  Attorney for Defendant
   CHAD SMANJAK

21

22

23

24

25

26

27

28

                                    21

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

CHAD SMANJAK
Defendant

Date  12 June 2012

22

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am the attorney for Chad Smanjak in the United States. Mr. Smanjak has resided in the Republic of South Africa for approximately two years where he has been represented by Marius DuToit, Esq., an attorney in South Africa. Mr. DuToit and I have thoroughly reviewed and discussed the provisions of this plea agreement, Mr. Smanjak's rights under United States law, possible defenses to the charges against Mr. Smanjak contained in the pending indictment against him in this Court, the applicable provisions of the United States Sentencing Guidelines and the consequences of entering into this plea agreement. Mr. DuToit has informed Mr. Smanjak of our discussions and communications regarding these matters, and I believe, based on my discussions with Mr. DuToit, that Mr. Smanjak fully understands them. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

LAWRENCE FELD
Attorney for Defendant
CHAD SMANJAK

June 29, 2012
Date

23

1

2                                EXHIBIT B

3
    a.      All funds seized from Monex Credit Company account # 1-
4           0868271-0 in the name of Universal Investment Holdings, LLC;

5   b.      All funds seized from Bank of America account # 5010-0113-1794,
            in the name of Universal Investment Holdings, LLC;
6
    c.      All funds seized from Legent Clearing LLC account # 1448-4245 in
7           the name of Copperwood Foundation;

8   d.      All funds seized from Legent Clearing LLC account # 1457-0369, in
            the name of United National SA;
9
    e.      All funds seized from Penson Financial Services, Inc. account #
10          50122944 the name of Carlton Rowe Inc.;

11  f.      All funds seized from Penson Financial Services, Inc. account #
            50053222 in the name of Carlton Rowe Inc.;
12
    g.      All funds seized from Penson Financial Services, Inc. account #
13          50124007 in the name of Cordillera Capital Inc.;

14  h.      All funds seized from Penson Financial Services, Inc. account #
            50053552 in the name of XAX International Group Inc.;
15
    i.      All funds seized from Penson Financial Services, Inc. account #
16          50053784 in the name of Independent Investor Group Inc.;

17  j.      All funds seized from Bank of the West account # 882671951 in
            the name of Keystone Investment Group LLC;
18
    k.      All funds seized from Wells Fargo Bank account # 3243145871 in
19          the name of Law Offices of James Burns;

20  l.      All funds seized from Penson Financial Services, Inc. account #
            57397374 in the name of Benchmark Capital LLC;
21
    m.      All funds seized from Penson Financial Services, Inc. account #
22          18395921 in the name of Hyperlink Media LLC;

23  n.      All funds seized from Penson Financial Services, Inc. account #
            69990257 in the name of Benchmark Capital LLC;
24
    o.      All funds seized from Penson Financial Services, Inc. account #
25          69990299 in the name of Legend Capital LLC;

26  p.      All funds seized from Penson Financial Services, Inc. account #
            50053438 in the name of Golden Jublilee Ventures Inc.;
27
    q.      All funds seized from Penson Financial Services, Inc. account #
28          69990281 in the name of Tower Capital LLC;

                                    24

r.     All funds seized from Penson Financial Services, Inc. account # 50059856 in the name of Cordillera Capital Inc.;

s.     All funds seized from Penson Financial Services, Inc. account # 18395913 in the name of Panamerica Capital Group Inc.;

t.     All funds seized from Penson Financial Services, Inc. account # 50059872 in the name of 369 Inc.;

u.     All funds seized from Penson Financial Services, Inc. account # 50053792 in the name of Last Chance Productions Inc.;

v.     All funds seized from Penson Financial Services, Inc. account # 50053578 in the name of Graysia Partners Inc.;

w.     All funds seized from Penson Financial Services, Inc. account # 50052539 in the name of Synergy Property Group Inc.;

x.     All funds seized from Penson Financial Services, Inc. account # 50059617 in the name of Panama Capital Partners SA;

y.     All funds seized from Oppenheimer and Company Inc. account #A02-0084792 in the name of Hyperlink Media LLC;

z.     All funds frozen in Capital Bank, Republic of Panama account # 01-122-00086-0 in the name of Copperwood Foundation;

aa.     All funds frozen in Capital Bank, Republic of Panama account # 01-122-00128-4 in the name of United National, SA;

bb.     All funds frozen in Capital Bank, Republic of Panama account # 01-122-00095-9 in the name of Bluefin Financial Group, Inc.;

cc.     All funds frozen in Capital Bank, Republic of Panama account #01-506-01088-5 in the name of Bluefin Financial Group, Inc.;

dd.     All funds frozen in Capital Bank, Republic of Panama account # 01-506-00863-5 in the name of Bluefin Financial Group, Inc.;

ee.     41 rare coins seized on March 16, 2010 from safe deposit Box #W5969 in the name of Chad Smanjak at Bank of America, 20061 Brookhurst Street, Huntington Beach, California;

ff.     30 Austrian gold coins seized on March 16, 2010 from safe deposit Box #W5969 in the name of Chad Smanjak at Bank of America, 20061 Brookhurst Street, Huntington Beach, California, and

gg.     50 one ounce gold coins seized on March 16, 2010 from safe deposit box # 6378H in the name of Chad Smanjak at Bank of America, 5101 East 2nd Street, Long Beach, California.

hh.     Accounts set up in the Cook Islands by co-conspirator P.W. and T.N.

ii.     Approximately $640,000 in bank accounts controlled by defendant in Cypress